**Slip Op. 12-96**

UNITED STATES COURT OF INTERNATIONAL TRADE

CHRYSAL USA, INC.                           :

                    *Plaintiff*,            :

               v.                      :        Court No. 11-00092

UNITED STATES,                              :

                  *Defendant*.           :

[Motion to Dismiss for lack of jurisdiction granted]

Dated:  July 18, 2012

    Peter S. Herrick, Peter S. Herrick, P.A., of Miami, Florida, for Plaintiff.

    Aimee Lee, Senior Trial Counsel, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, New York, for Defendant.  With her on the brief were Stuart F. Delery, Acting Assistant Attorney General, and Barbara S. Williams, Attorney in Charge, International Trade Field Office.  Of counsel on the brief was Yelena Slepak, Office of the Assistant Chief Counsel, International Trade Litigation, Bureau of Customs and Border Protection, U.S. Department of Homeland Security, of New York, New York.

# OPINION

RIDGWAY, Judge:

    In this action, plaintiff Chrysal USA, Inc. ("Chrysal") seeks to challenge the tariff classification of "flower food" which was among the various products included in 17 entries of merchandise that Chrysal imported into the United States in 2008.  *See generally* Complaint.  Chrysal invokes 28 U.S.C. § 1581(a), which vests the U.S. Court of International Trade with exclusive jurisdiction over "any civil action commenced to contest the denial of a protest."  *See id.*

¶ 1; 28 U.S.C. § 1581(a) (2006);[1] *see also* Plaintiff's Memorandum in Support of Its Opposition to Defendant's Motion to Dismiss ("Pl.'s Brief") at 2.

Now pending before the Court is Defendant's Motion to Dismiss for want of jurisdiction. Emphasizing that jurisdiction pursuant to 28 U.S.C. § 1581(a) is predicated on the Bureau of Customs and Border Protection's denial of a valid protest,[2] the Government argues that no such protest was filed here. *See* Defendant's Memorandum in Support of Its Motion to Dismiss ("Def.'s Motion to Dismiss") at 4-13; Defendant's Reply Memorandum ("Def.'s Reply Brief") at 1-8.

As discussed in detail below, the Government's motion must be granted, and this action dismissed.[3]

## I.  **Background**

Because the filing of a timely, valid protest is a condition precedent to the exercise of jurisdiction under 28 U.S.C. § 1581(a), the Government's pending Motion to Dismiss turns on whether an August 2009 letter to Customs from Chrysal's Dutch parent company constituted a "protest," as defined by the applicable statute and regulation. *See* 19 U.S.C. § 1514(c)(1)(A)-(D) (establishing statutory requirements for contents of a protest); 19 C.F.R. § 174.13(a)(1)-(6) (establishing regulatory requirements for contents of protest).

---

[1]All statutory citations herein are to the 2006 edition of the United States Code. Similarly, all citations to regulations are to the 2008 edition of the Code of Federal Regulations.

[2]The Bureau of Customs and Border Protection, which is part of the U.S. Department of Homeland Security, is referred to as "Customs" herein.

[3]Review of the parties' briefs makes it clear that the pending motion can be decided based on the papers alone, and that there is no need for oral argument.

At issue in this action are 17 entries of merchandise that Chrysal imported into the United States in 2008.  *See* Summons; Complaint ¶¶ 1, 12; Pl.'s Brief at 1.[4]  According to the relevant invoices, the 17 entries included a range of various plant-related products – including "leafshine," "Chrysal cleaner," and "rose liquid," to name a few.  *See* Def.'s Motion to Dismiss at 1; invoices. According to Chrysal's complaint, the 17 entries also included "flower food," although none of the invoices identify any item as "flower food."  *See* Complaint ¶ 6; Pl.'s Brief at 1-2; Def.'s Motion to Dismiss at 1, 11; invoices.

At the time of importation, Chrysal filed entry documents with Customs claiming that the various products in the 17 subject entries were classifiable under assorted specified provisions of the Harmonized Tariff Schedule of the United States ("HTSUS").  *See* Def.'s Motion to Dismiss at 1 (*citing* entry papers).[5]  In particular, in the entry documents that it filed with Customs, Chrysal claimed that the imported "flower food" was properly classifiable under HTSUS subheading 3824.90.92 as a "chemical product[] [or] preparation[] of the chemical or allied industries" and thus subject to customs duties at the rate of 5.00% *ad valorem*.  *See* Complaint ¶ 6; Pl.'s Brief at 1; Def.'s Motion to Dismiss at 2 (*citing* entry papers); Subheading 3824.90.92, HTSUS.

Some months later (in mid-April 2009), before the subject entries were liquidated, Chrysal filed post summary adjustments with Customs, asserting that "flower food" was "wrongly classified" and seeking a refund of duties.  *See* Complaint, Exh. A (post summary adjustment filed for Entry

---

[4]The 17 entries at issue are Entries HG8-0117962-0, HG8-0118224-4, HG8-0118614-6, HG8-0118630-2, HG8-0119063-5, HG8-0119239-1, HG8-0119240-9, HG8-0119252-4, HG8-0119259-9, HG8-0119264-9, HG8-0119529-5, HG8-0119539-4, HG8-0119669-9, HG8-0119833-1, HG8-0120126-7, HG8-0120127-5, HG8-0120150-7.  *See* Summons.

[5]All citations to the HTSUS herein are to the 2008 edition.

HG8-0119669-9, submitted as example of all relevant post summary adjustments); Complaint ¶ 7;

Pl.'s Brief at 1; Def.'s Motion to Dismiss at 2.[6]  In its post summary adjustments, Chrysal did not

identify the specific tariff provision that it sought to claim.  *See* Complaint, Exh. A (example of post

summary adjustment).  However, the post summary adjustments referred to an "attached letter from

the Rulings Division" of Customs.  *See id.* (example of post summary adjustment); *see also* Pl.'s

Brief at 1; Def.'s Motion to Dismiss at 2; HQ 955771 (Jan. 2, 1996).  In that 1996 ruling, denoted

HQ 955771, Customs reviewed four potential classifications and concluded that "powdered cut

flower food" of a particular chemical composition was classifiable as a "glucose" product under

subheading 1702.30.40 of the HTSUS.  *See* HQ 955771.[7]

By email message to Chrysal in late April 2009,[8] Customs' Import Specialist noted the

chemical composition of the "powdered cut flower food" at issue in HQ 955771 and distinguished

---

[6]The Government explains that "[a] post summary adjustment (also referred to as [a] post entry amendment), may be filed by an importer to correct an error in an entry summary prior to liquidation."  *See* Def.'s Motion to Dismiss at 2 n.1.

As the Government notes, not all of the post summary adjustments filed by Chrysal related to "flower food."  *See* Def.'s Motion to Dismiss at 2 n.2.  Chrysal's post summary adjustment for Entry HG8-0118630-2, for example, sought to change the classification of "BLG Pokon Leafshine" from HTSUS subheading 2942.00.10 (a provision covering "Other organic compounds: Aromatic or modified aromatic: Other: Other") to subheading 3824.90.92.  *See id.*

[7]HTSUS subheading 1702.30.40 covers "Other sugars, including chemically pure lactose, maltose, glucose and fructose, in solid form; sugar syrups not containing added flavoring or coloring matter; artificial honey, whether or not mixed with natural honey; caramel: Glucose and glucose syrup, not containing fructose or containing in the dry state less than 20 percent by weight of fructose: Other."

[8]It is not clear from the record what communication (or communications) from Chrysal may have prompted the Import Specialist's April 2009 email message.  In any event, as explained below, that email message is of no moment.  *See generally* n.18 and related text, *infra*.

it from the chemical composition of a product that the email message identified as "Chrysal Clear

Professional 2 T-bag." *See* Complaint, Exh. B (email message to Chrysal from Customs Import

Specialist, dated April 28, 2009); Def.'s Motion to Dismiss at 2.[9]  Thereafter, Customs rejected

_____

[9]Chrysal's own gloss on the Import Specialist's email message has varied dramatically over time.  In its complaint, Chrysal stated that the email message "advised [Chrysal] of HQ 955771 and that the proper classification of the flower food was under HTSUS subheading 1702.30.4080." *See* Complaint ¶ 10.  In contrast, in its brief in response to the Government's Motion to Dismiss, Chrysal asserts that the Import Specialist's email message "wrongly concluded that Chrysal Clear Professional 2 T-bag was not comparable to the flower food covered by ruling 955771." *See* Pl.'s Brief at 2.  The email message speaks for itself, of course.  Moreover, for reasons explained below, it is essentially irrelevant here.  *See* n.18 and related text, *infra*.

In any event, the Import Specialist's email message stated that she had reviewed the "Material Safety Data Sheets" (plural) for a product identified as "Chrysal Clear Professional 2 T-bag," which had a chemical composition of "Alliphatic acid 10-20%" and a "Mixture of non-hazardous ingredients 80-90%." *See* Complaint, Exh. B.  As the email message further noted, the "powdered cut flower food" at issue in HQ 955771 consisted of "approximately: 82 to 91.3 percent dextrose monohydrate, 4.7 to 13 percent water, 1.5 percent potassium, and 2.5 percent other inorganic materials" was properly classifiable as a "glucose" product under subheading 1702.30.40 of the HTSUS.  *See* HQ 955771; Complaint, Exh. B.

Appended to Chrysal's brief in response to the pending Motion to Dismiss are copies of what Chrysal now identifies as "the Material Safety Data Sheet referred to in the [Import Specialist's] email" and "a declaration of composition from Chrysal for the flower food." *See* Pl.'s Brief at 2; *id*., Exh. A (Material Safety Data Sheet for "Chrysal Clear Professional 2," dated "09/29/08"); *id*., Exh. B ("Declaration of Composition" for "Chrysal Clear Professional 2," dated "08-04-2011"); Complaint, Exh. B (email message to Chrysal from Customs Import Specialist).

The Material Safety Data Sheet attached to Chrysal's brief states that "Chrysal Clear Professional 2" is composed of 1-5% "Aliphatic acid" and 95-99% "Non-Hazardous Ingredients." *See* Pl.'s Brief, Exh. A (Material Safety Data Sheet for "Chrysal Clear Professional 2").  In its brief, Chrysal asserts that "[t]he aliphatic acid of 1-5% [specified in the Material Safety Data Sheet attached to its brief] would equate to the 1.5% potassium and 2.5% other inorganic materials" referred to in the Import Specialist's email message and in HQ 955771.  *See* Pl.'s Brief at 2; Complaint, Exh. B (email message to Chrysal from Customs Import Specialist); HQ 955771. Chrysal's brief further asserts that "[t]he non-hazardous ingredients of 95-99% [specified in the Material Safety Data Sheet attached to its brief] would equate to the glucose and water" to which the Import Specialist's email message and HQ 955771 refer.  *See* Pl.'s Brief at 2; Complaint, Exh. B; HQ 955771; *see also* Pl.'s Brief, Exh. B ("Declaration of Composition" for "Chrysal Clear

Chrysal's post summary adjustments, and subsequently liquidated the "flower food" in the subject

entries as entered by Chrysal, under subheading 3824.90.92.  *See* Complaint, Exh. A (example of

post summary adjustment, bearing Import Specialist's handwritten notation "Disagree" and the date

"6/3/09"); Complaint ¶¶ 9, 11; Def.'s Motion to Dismiss at 2-3.[10]

      In late August 2009, Chrysal International BV – Chrysal's Dutch parent company – sent

Customs a letter, which Chrysal contends is the formal "protest" that 28 U.S.C. § 1581(a) requires

as a basis for invoking this court's jurisdiction.  *See* Complaint, Exh. C (letter to Customs from

Chrysal International BV, dated Aug. 26, 2009); Complaint ¶ 12; Pl.'s Brief at 2; Def.'s Motion to

---

Professional 2," stating that composition of product is 31% "Sugars," 4% "Acidifier (citric acid)," 0.2% "Additives (preservative, salts)," and 65% "Water").

      Chrysal's brief never offers any explanation of the significance of this information.  It is nevertheless noteworthy that even a cursory comparison of the Material Safety Data Sheet for "Chrysal Clear Professional 2" appended to Chrysal's brief reveals that it is not the same as the Material Safety Data Sheets (plural) for "Chrysal Clear Professional 2 T-bag" that the Import Specialist reviewed in her email message – and, moreover, that the Material Safety Data Sheets appear to be for two different products.  Specifically, as explained above, the Import Specialist's email message indicated (among other things) that the Material Safety Data Sheets that she reviewed were for a product that was composed of 10-20% "Alliphatic acid," whereas the Material Safety Data Sheet attached to Chrysal's brief is for a product made up of only 1.5% aliphatic acid. *Compare* Complaint, Exh. B (email message to Chrysal from Customs Import Specialist) *with* Pl.'s Brief, Exh. A (Material Safety Data Sheet for "Chrysal Clear Professional 2," dated "09/29/08").

      The Government quite properly objects to the "Material Safety Data Sheet" and the "Declaration of Composition" attached to Chrysal's brief.  *See* Def.'s Reply Brief at 2 n.1; Pl.'s Brief, Exhs. A & B.  Even if those documents were to be considered, however, they would not affect the outcome here.

      [10]It is undisputed that three of the 17 entries were not liquidated until mid-September 2009 – that is, *after* Chrysal's parent company sent its August 2009 letter.  *See* Pl.'s Brief at 5; Def.'s Motion to Dismiss at 13-14; Def.'s Reply Brief at 9.  Accordingly, as explained below, jurisdiction would not lie as to those three entries even if the August 2009 letter were determined to otherwise constitute a valid protest.  *See* section II.B, *infra* (explaining that statute and regulation authorize filing of protest only after liquidation occurs).

Dismiss at 3; 28 U.S.C. § 1581(a) (vesting Court of International Trade with exclusive jurisdiction over civil action contesting "the denial of a protest").[11]   Sent on the stationery of Chrysal's parent company, the August 2009 letter bore a "Subject" line that read simply "Product composition Chrysal Flowerfood."  *See* Complaint, Exh. C.  In its entirety, the letter stated:

> Dear reader,
>
> I hereby state that since [HQ 955771, the Customs ruling] which was issued on January 2, 1996 we did not make any major changes to the ingredients and composition of the flower food we sell via our subsidiary company Chrysal USA.
>
> Yours sincerely
>
> CHRYSAL INTERNATIONAL BV
>
> Daphne A. Witzel-Voorn
> Manager QC and recipes

*Id*.  Roughly 17 ½ months later, in mid-February 2011, counsel for Chrysal sent Customs a letter characterizing the August 2009 letter from Chrysal's parent company as a "protest" and requesting its "accelerated disposition."  *See* Complaint, Exh. D (letter to Customs from counsel to Chrysal, dated Feb. 18, 2011); Complaint ¶ 13; Def.'s Motion to Dismiss at 3.[12]   Customs responded on April 21, 2011, advising Chrysal that the August 2009 letter could not be considered a valid protest.  *See* Def.'s Motion to Dismiss at 3.

---

[11]The pending Motion to Dismiss does not address whether Chrysal International BV – Chrysal's Dutch parent company – was permitted to file a protest for its U.S. subsidiary (*i.e.*, Chrysal USA, Inc., the plaintiff here).  *See* 19 U.S.C. § 1514(c)(2); 19 C.F.R. § 174.12(a).

[12]The statute and regulations permit an importer to request "accelerated disposition" of a protest.  When such a request is made, Customs must reach a decision on the protest within 30 days; otherwise, the protest is deemed denied by operation of law.  The accelerated disposition process thus allows an importer to expedite Customs' decision on a protest, which is a prerequisite for judicial review.  *See* 19 U.S.C. § 1515(b); 19 C.F.R. § 174.22.

This action followed, in which Chrysal invokes jurisdiction to contest the denial of a protest pursuant to 28 U.S.C. § 1581(a), claims that the August 2009 letter from its parent company to Customs constituted the requisite protest, and asserts that the "flower food" in the 17 subject entries should have been classified under HTSUS subheading 1702.30.40, dutiable at the rate of 2.2¢/kg. *See* Complaint ¶¶ 1, 12, & "Wherefore" clause; Def.'s Motion to Dismiss at 1-2, 3; Subheading 1702.30.40, HTSUS.

## II.  <u>Analysis</u>

Where – as here – subject matter jurisdiction is in dispute, the party asserting jurisdiction bears "the burden of showing that he is properly in court." <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178, 189 (1936); *see also* <u>Norsk Hydro Canada, Inc. v. United States</u>, 472 F.3d 1347, 1355 (Fed. Cir. 2006); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, p. 211 (3d ed. 2004).  In the case at bar, jurisdiction rests upon 28 U.S.C. § 1581(a), which, "[b]y its terms, . . . limits the jurisdiction of the Court of International Trade to appeals from denials of valid protests." *See* <u>Koike Aronson, Inc. v. United States</u>, 165 F.3d 906, 908 (Fed. Cir. 1999); *see also* <u>DaimlerChrysler Corp. v. United States</u>, 442 F.3d 1313, 1319 (Fed. Cir. 2006); 28 U.S.C. § 1581(a).  In the instant case, Chrysal never filed a protest.  Hence, there was no denial of a protest to be appealed, and the Court of International Trade lacks jurisdiction to hear Chrysal's complaint.

Chrysal maintains that the August 26, 2009 letter from its Dutch parent company to Customs constituted a valid protest.  *See* Complaint ¶ 12; *Id.*, Exh. C; Pl.'s Brief at 2, 5.  It is, however, no exaggeration to say – as the Government does here – that the August 2009 letter "contains *none of*

the requisite elements of a protest" which are established both by statute and by regulation.  *See* Def.'s Reply Brief at 1 (emphasis added); *see also* 19 U.S.C. § 1514(c)(1); 19 C.F.R. § 174.13(a); Def.'s Motion to Dismiss at 5-13; Def.'s Reply Brief at 1-8.  As discussed below, this action therefore must be dismissed for lack of jurisdiction.

Moreover, the restrictions imposed by statute are not confined to a protest's contents.  The statute also imposes restrictions as to timing, and expressly prohibits the filing of a protest "before . . . [the] date of liquidation."  19 U.S.C. § 1514(c)(3)(A); *see also* 19 C.F.R. § 174.12(e) (requiring filing of any protest "within 90 days *after*" a specified protestable decision or event) (emphasis added).  Thus, even if the August 2009 letter somehow were found to satisfy the statutory and regulatory requirements governing the contents of a protest (which it does not), the letter was premature as to three entries which were not liquidated until mid-September 2009.  Accordingly, quite apart from the contents of the August 2009 letter, there was no valid protest as to Entries HG8-0120126-7, HG8-0120127-5, and HG8-0120150-7.  And, absent a valid protest, jurisdiction under 28 U.S.C. § 1581(a) cannot lie.  *See* Pl.'s Brief at 5; Def.'s Motion to Dismiss at 13-14; Def.'s Reply Brief at 9.  The timing of the August 2009 letter constitutes a second, independent basis for dismissal as to three of the 17 entries at issue in this action.

A.   The Statutory and Regulatory Requirements Governing the Sufficiency of A Protest

By statute, a protest must include certain necessary information.  In particular, 19 U.S.C. § 1514(c)(1) requires, in relevant part, that:

A protest must set forth *distinctly and specifically* –

(A)      each decision [of Customs] . . . as to which protest is made;

>    (B)      each category of merchandise affected by each [protested] decision . . . ;
>    (C)      the nature of each objection and the reasons therefor; and
>    (D)      any other matter required by the Secretary by regulation.

19 U.S.C. § 1514(c)(1) (emphasis added).  The implementing regulation promulgated by Customs

– expressly authorized by 19 U.S.C. § 1514(c)(1)(D), and set forth at 19 C.F.R. § 174.13(a) –

expands, and elaborates upon, the elements required for a valid protest, providing, in relevant part:

>    *Contents*, *in general*.  A protest shall contain the following information:
>
>    (1)      The name and address of the protestant, *i.e.*, the importer of record or
>             consignee, and the name and address of his agent or attorney if signed
>             by one of these;
>    (2)      The importer number of the protestant. . . . ;
>    (3)      The number and date of the entry;
>    (4)      The date of liquidation of the entry, . . . ;
>    (5)      A specific description of the merchandise affected by the decision as
>             to which protest is made; [and]
>    (6)      The nature of, and justification for[,] the objection set forth distinctly
>             and specifically with respect to each category, payment, claim,
>             decision, or refusal; . . . .

19 C.F.R. § 174.13(a).

        The applicable statute and regulation thus make it clear, in no uncertain terms, that every

protest must set forth – "distinctly and specifically" – "the nature of each objection and the reasons

therefor." 19 U.S.C. § 1514(c)(1)(C); *see also* 19 C.F.R. § 174.13(a)(6) (requiring that protest detail

"[t]he nature of, and justification for[,] the objection set forth *distinctly and specifically* . . . ")

(emphasis added).  The statute further mandates that every protest identify – again, "distinctly and

specifically" – the particular Customs decision(s) being protested, as well as "each category of

merchandise affected" by each protested decision.  *See* 19 U.S.C. § 1514(c)(1)(A)-(B).

The regulation highlights the need for specificity as to each element of a protest and requires that every protest provide additional practical information, including the name and address of the protestant (19 C.F.R. § 174.13(a)(1)); the protestant's importer number (19 C.F.R. § 174.13(a)(2)); both the entry number and the date of the entry at issue (19 C.F.R. § 174.13(a)(3)); the date of liquidation (19 C.F.R. § 174.13(a)(4)); and "[a] specific description of the merchandise affected" (19 C.F.R. § 174.13(a)(5)).

The Court of Appeals has emphasized that these statutory and regulatory requirements governing the sufficiency of a protest are "mandatory." *See* Koike Aronson, 165 F.3d at 909. And, in the seminal Davies v. Arthur, the U.S. Supreme Court summarized the rationale for requiring that every protest convey to Customs such "distinct" and "specific" information. *See* Davies v. Arthur, 96 U.S. 148, 151 (1877). The Supreme Court there held that every protest:

> . . . must contain a *distinct and clear specification* of each substantive ground of objection to the payment of the duties. Technical precision is not required; but the objections must be *so distinct and specific*, as, when fairly construed, to show that the objection . . . was sufficient to notify [Customs] of its true nature and character, to the end that [Customs] might ascertain the precise facts, and have an opportunity to correct the mistake and cure the defect, if it was one which could be obviated.

*Id.*, 96 U.S. at 151 (emphases added) (quoted with approval in, *inter alia*, Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1367 (Fed. Cir. 2006); Koike Aronson, 165 F.3d at 908).

Accordingly, every protest must provide the requisite "distinct" and "specific" information, so as to apprise Customs of the nature and character of the protestant's complaint.

Courts have considered the sufficiency of protests in a wide range of contexts, and have not hesitated to dismiss cases where the protest failed to include information required by statute or regulation. In Koike Aronson, for example, although the protest specified "the classification to

which objection was made," the protest "did not identify any preferred alternative [classification]

or give any details about the nature of the objection or the reasons for it."  Koike Aronson, Inc. v.

United States, 21 CIT 1056, 1056, 976 F. Supp. 1035, 1036 (1997), *aff'd*, 165 F.3d 906 (Fed. Cir.

1999).  The case was therefore dismissed for lack of subject matter jurisdiction.  *Id.*, 21 CIT at 1057,

976 F. Supp. at 1037.  The Court of Appeals affirmed, highlighting the skeletal nature of the protest

at issue:

> Koike's protest fails to satisfy the statutory or regulatory requirements of validity.
> In particular, the protest does not state either "the nature of each objection and the
> reasons therefor," 19 U.S.C. § 1514(c), or the "justification for [each] objection set
> forth distinctly and specifically," 19 C.F.R. § 174.13(a)(6).  Instead, it simply states,
> without elaboration, that protest is made against Customs' assessment of duties on
> the identified entries.  The protest does not even specify the tariff classifications that
> Koike would have Customs adopt in lieu of the classifications at which it was
> directed.

Koike Aronson, 165 F.3d at 908-09.  The Court of Appeals emphasized that "[t]he requirements for

a valid protest that are contained in [the statute] and the implementing regulation . . . are mandatory,

and Koike's protest plainly failed to satisfy them."  *Id.*, 165 F.3d at 909.

XL Specialty Insurance is another example of a case dismissed for lack of jurisdiction due

to the insufficiency of the protest.  *See* XL Specialty Ins. Co. v. United States, 28 CIT 858, 341 F.

Supp. 2d 1251 (2004).  The protest in that case had been submitted on Customs' official protest

form, with three additional pages attached presenting several "alternative arguments" challenging

Customs' liquidation of the subject entries.  *See id.*, 28 CIT at 860-61, 341 F. Supp. 2d at 1253-54

(setting forth the main text of the protest).  The protest provided much of the information required

by statute and regulation, including the relevant entry numbers, the dates of entry, the dates of

liquidation, the decisions being protested, and "the nature of the objection[s]."  *See id.*, 28 CIT at

860, 868, 341 F. Supp. 2d at 1253, 1260. The court nevertheless dismissed the case, concluding that

the protest was not valid because "it failed to state distinctly and specifically the *reasons* or

*justifications* for [the protestant's] objections to Customs' decision as required under the statute and

regulation." *See id.*, 28 CIT at 869, 341 F. Supp. 2d at 1260; *see also* 19 U.S.C. § 1514(c)(1)(C);

19 C.F.R. § 174.13(a)(6). The court held that there was "no possible construction of the language

of the protest that would indicate that the protest gave the Customs official . . . sufficient information

such that the official could correct any mistakes in liquidation." *See* XL Specialty Ins. Co., 28 CIT

at 869, 341 F. Supp. 2d at 1260.

        To the same effect is Washington International Insurance, which was also dismissed for want

of jurisdiction due to the lack of a valid protest. *See* Washington Int'l Ins. Co. v. United States, 16

CIT 599 (1992). Like the protest in XL Specialty Insurance, the protest in Washington International

Insurance was filed on Customs' official protest form. *See* Washington Int'l Ins. Co., 16 CIT at 600-

01. The importer had checked the box on the form to indicate that the protest concerned the

classification of the subject merchandise. *See id.*, 16 CIT at 600. However, the protest "neglected

to provide any description whatsoever of [the importer's] classification objection." *See id.*, 16 CIT

at 603. In addition, the protest failed to "indicate why [the importer] felt Customs' classification

was incorrect and did not even hint at the classification rate or tariff provision under which [the

importer] was claiming." *See id*. The court concluded that the lack of information required by 19

U.S.C. § 1514(c)(1)(C) and 19 C.F.R. § 174.13(a)(6) rendered the protest "fatally deficient," and

mandated dismissal of the case. *See id.*, 16 CIT at 601-02, 603, 605; 19 U.S.C. § 1514(c)(1)(C)

(requiring specification of "the nature of each objection and the reasons therefor"); 19 C.F.R. §

174.13(a)(6) (requiring specification of "[t]he nature of, and justification for[,] the objection").

Similarly, in <u>Tail Active Sportswear</u>, the court dismissed the case for lack of jurisdiction because the underlying protest failed to "identify[   ] specifically . . . the category of merchandise in the entry under protest affected by [the challenged Customs decision]," as required by 19 U.S.C. § 1514(c)(1)(B).  *See* <u>Tail Active Sportswear v. United States</u>, 16 CIT 504, 507, 793 F. Supp. 325, 328 (1992).  Although the one-page protest raised objections as to the classification and rate of duty assessed on women's apparel, it was silent as to men's apparel, which was the subject of the lawsuit. *Id.*, 16 CIT at 504-05, 793 F. Supp. at 325-26.  The plaintiff asserted that the Customs import specialist had understood that the protest was missing a second page, which (the plaintiff maintained) was supposed to have been a page raising objections as to men's apparel, but which – according to the plaintiff – had been mistakenly duplicative of the first page (and thus covered only women's apparel).  *See id.*, 16 CIT at 505-07, 793 F. Supp. at 326-28.  Emphasizing that "[p]rotest as to classification of the women's wearing apparel [did] not constitute protest as to the men's wearing apparel," the court ruled that, "even assuming *arguendo* that the alleged duplicative second page was attached [to the protest], the . . . protest simply did not distinctly and specifically set forth *men's wearing apparel* as the category of merchandise as to which the classification, rate of duty and liquidation was protested."  *Id.*, 16 CIT at 507-08, 793 F. Supp. at 328.  The court rejected the plaintiff's arguments to the contrary as "frivolous."  *Id.*, 16 CIT at 507, 793 F. Supp. at 327.[13]

---

[13]*See also*, *e.g.*, <u>American Nat'l Fire Ins. Co. v. United States</u>, 30 CIT 931, 943, 947, 441 F. Supp. 2d 1275, 1288-89, 1291 (2006) (dismissing classification claim based on determination that protest was not valid, where protest "[did] not specify what Customs classification [was] being protested," where protest "fail[ed] to set forth any reason for the objection or to state the nature of the objection," and where protest included "no statement about what Harmonized Tariff number [the protestant] object[ed] to or what the alleged correct classification number should be"); <u>Ammex Inc.</u>

Chrysal's arguments here are equally insubstantial.  Chrysal's asserted protest – that is, the August 2009 letter to Customs from Chrysal's Dutch parent company – consists of a single, straightforward sentence:  "I hereby state that since [HQ 955771, the Customs ruling] which was issued on January 2, 1996 we did not make any major changes to the ingredients and composition of the flower food we sell via our subsidiary company Chrysal USA."  *See* Complaint, Exh. C (letter to Customs from Chrysal International BV, dated Aug. 26, 2009).  This simple communication – which begins "I hereby state . . . " – is, by its terms, merely informational.  *See id.*  Indeed, the "Subject" line of the letter reads: "Product composition Chrysal Flowerfood."  *See id.*

The letter thus is not designated as a "protest"; nor does it even reference the term "protest."  *See* Complaint, Exh. C; *see also* 19 C.F.R. § 174.12(b) (requiring, *inter alia*, that every protest be "clearly labeled 'Protest'"); Ammex Inc. v. United States, 27 CIT 1677, 1685, 288 F. Supp. 2d 1375, 1382 (2003) (dismissing claim for lack of jurisdiction, based on, *inter alia*, determination that alleged protest was not "sufficiently labeled as 'Protest' and addressed to the appropriate Customs official to satisfy the requirements of 19 C.F.R. § 174.12(b)").[14]  The August 2009 letter also

_____

v. United States, 27 CIT 1677, 1685, 288 F. Supp. 2d 1375, 1381-82 (2003) (dismissing action, based on determination that protest "neither states the 'reasons' for the objection, 19 U.S.C. § 1514(c), nor does it elaborate on the 'justification for [the] objection set forth distinctly and specifically,' 19 C.F.R. § 174.13(a)(6)").

[14]In its entirety, 19 C.F.R. § 174.12(b) provides:

*Form and number of copies.*  Protests against decisions of a port director shall be filed in quadruplicate on Customs Form 19 [*i.e.*, the bureau's standard, official Protest form] or a form of the same size *clearly labeled* "*Protest*" and setting forth the same content in its entirety, in the same order, addressed to the port director.  All schedules or other attachments to a protest (other than samples or similar exhibits) shall also be filed in quadruplicate.

contains no objection to any particular Customs decision, and it gives no hint of any grievance. *See* Complaint, Exh. C. Nor does the letter assert any request for relief. *Id.* By any measure, the letter is much too lacking in specificity so as to even resemble a valid protest.

As the Government correctly points out, the August 2009 letter includes none of the elements of a protest set forth by statute and regulation. *See* Def.'s Motion to Dismiss at 10, 12-13; Def.'s Reply Brief at 1, 4, 5. The August 2009 letter thus stands in stark contrast to the alleged protests in the cases discussed above, and in other similar cases. Unlike the letter here, all of those other alleged protests included at least some of the requisite information. Those protests were nevertheless determined to be insufficient and therefore not valid. By comparison, the August 2009 letter to Customs from Chrysal's parent company is far more deficient.

Specifically, the August 2009 letter fails to identify any particular "[Customs] decision . . . as to which protest is made." *See* Complaint, Exh. C; 19 U.S.C. § 1514(c)(1)(A); *see generally* Def.'s Motion to Dismiss at 10, 12; Def.'s Reply Brief at 1, 4, 6. As explained above, the letter appears to be purely informational, and gives no indication that it is connected to any dispute that Chrysal might have with any decision of Customs that might form the basis of a protest. The letter thus fails to comply with the first statutory criterion for a valid protest, 19 U.S.C. § 1514(c)(1)(A).

Further, the letter includes no reference to any specific "category of merchandise" that is the subject of protest. *See* Complaint, Exh. C; 19 U.S.C. § 1514(c)(1)(B); *see also* 19 C.F.R. §

_____

19 C.F.R. § 174.12(b) (second emphasis added). Pursuant to this regulation and "existing and long standing case law," "a separate letter containing the information required in the regulations and *clearly labeled as a protest* . . . [may] suffice[] [to constitute a protest] so long as the letter [is] in conformity with the importer's obligations under the statutory scheme and [is] 'sufficient to notify the [duty] collector of [the objection's] true nature and character.'" <u>Ammex</u>, 27 CIT at 1686 n.11, 288 F. Supp. 2d at 1382 n.11 (emphasis added) (*quoting* <u>Davies</u>, 96 U.S. at 151).

174.13(a)(5) (requiring protest to include "[a] specific description of the merchandise" that is subject

to protest); *see generally* Def.'s Motion to Dismiss at 10, 11, 12; Def.'s Reply Brief at 4.  To the

extent that Customs might have gone beyond the four corners of the August 2009 letter and

reviewed HQ 955771 (the Customs ruling to which the August 2009 letter referred), that reference

still does not suffice to adequately identify the merchandise.  *See* Complaint, Exh. C; HQ 955771

(Jan. 2, 1996); *see generally* Def.'s Motion to Dismiss at 11.  HQ 955771, which makes no mention

of Chrysal, dealt with "powdered cut flower food" of a specified chemical composition.  *See* HQ

955771.  And, even assuming that it were somehow possible to surmise that the August 2009 letter

– which includes no entry numbers or dates of entry or other identifying information – was intended

to refer to the 17 entries at issue in this action, the entry papers for the 17 entries reflect the

importation of a range of various products, not just a single item.  *See* Complaint, Exh. C; Def.'s

Motion to Dismiss at 1, 11; Def.'s Reply Brief at 6.  Moreover, none of the invoices associated with

the 17 entries identify any of the products therein as "flower food."  *See* Def.'s Motion to Dismiss

at 11; Def.'s Reply Brief at 6; invoices.  Thus, even if the August 2009 letter were to be read in

conjunction with HQ 955771 (to which the letter referred), the August 2009 letter does not

adequately identify any specific "category of merchandise" that is the subject of a challenge, and

thus fails to comply with 19 U.S.C. § 1514(c)(1)(B).[15]

_____

[15]Chrysal maintains that the August 2009 letter should be read together with HQ 955771 to
constitute its protest.  *See* Pl.'s Brief at 5 (asserting that protest consisted of both the August 2009
letter, which Chrysal asserts "identified the importer of record [as] being Chrysal," and HQ 955771,
which Chrysal claims "covered the description of the merchandise and the classification . . . being
challenged").  However, Chrysal does not argue that the protest included the post summary
adjustments that Chrysal filed with Customs in mid-April 2009.  *See* Complaint, Exh. A (example
of post summary adjustments).  Nor could Chrysal reasonably do so, because the post summary
adjustments predated the liquidation of the entries at issue, and – by statute and regulation – a protest

The August 2009 letter similarly gives no notice of "the nature of [Chrysal's] objection and the reasons therefor," and is insufficient under the statute for that reason as well. *See* Complaint, Exh. C; 19 U.S.C. § 1514(c)(1)(C); *see also* 19 C.F.R. § 174.13(a)(6) (requiring protest to state "[t]he nature of, and justification for[,] the objection"); *see generally* Def.'s Motion to Dismiss at 10, 12; Def.'s Reply Brief at 1, 4. As such, the August 2009 letter fails to satisfy any of the statutory criteria for a protest. *See* 19 U.S.C. § 1514(c)(1)(A)-(C).

The August 2009 letter from Chrysal's parent company fares no better when judged against the six specific regulatory criteria that supplement the statutory criteria. *See* 19 C.F.R. § 174.13(a)(1)-(6). The regulation – which is expressly authorized by Congress – requires protestants to provide certain very practical information that is needed to afford Customs "an opportunity to correct the mistake and cure the defect, if it was one which could be obviated." *See* 19 U.S.C. § 1514(c)(1)(D) (requiring that protest include "any other matter required by [Customs] by regulation"); Davies v. Arthur, 96 U.S. at 151.

In particular, the regulation requires that every protest include "[t]he name and address of the protestant," "[t]he importer number of the protestant," and "[t]he number and date of the entry" at issue, as well as "[t]he date of liquidation of the entry." *See* 19 C.F.R. § 174.13(a)(1)-(4). Whether the August 2009 letter is read alone or together with HQ 955771 (the Customs ruling to which the letter refers), the August 2009 letter fails to provide any of this most basic information.

---

can be lodged only after liquidation occurs. *See* 19 U.S.C. § 1514(c)(3)(A); 19 C.F.R. § 174.12(e); *see also* section II.B, *infra* (discussing timing restrictions on filing of protests). Further, in addition to the timing issue, the courts have held that it is improper to consider collateral communications between the parties in determining the sufficiency of a protest. *See generally* n.18 and related text, *infra.*

*See* Complaint, Exh. C; HQ 955771; *see generally* Def.'s Motion to Dismiss at 10; Def.'s Reply

Brief at 1, 4, 6.  In addition, because the August 2009 letter does not adequately identify any

particular "category of merchandise" that is the subject of a protest (*see* discussion of 19 U.S.C. §

1514(c)(1)(B), above), it goes without saying that the letter does not satisfy the more detailed

regulatory requirement to provide "[a] specific description of the merchandise."  *See* 19 C.F.R. §

174.13(a)(5).  Similarly, the August 2009 letter – which fails to specify "the nature of each objection

and the reasons therefor" (*see* discussion of 19 U.S.C. § 1514(c)(1)(C), above) – by definition also

fails to state "[t]he nature of, and justification for[,] the objection," as the regulation requires.  *See*

19 C.F.R. § 174.13(a)(6).

In short, any fair reading of the August 2009 letter must conclude that the letter was purely

informational.  The letter is not labeled a "protest," nor does it use that term.  It is utterly barren of

anything that might fairly inform Customs of any dispute of any type vis-a-vis any specific

importations by Chrysal.  Even if read in the context of HQ 955771, the August 2009 letter reflects

no suggestion of any grievance on the part of Chrysal and no objection by Chrysal to any particular

decision by Customs.  Conspicuously absent is any request for relief.  The letter lacks even the most

fundamental information required of any protest by statute and regulation, such as the protestant's

name and address, the protestant's importer number, the number and date of the entry at issue, and

the date of liquidation.

Only now – with the benefit of Chrysal's complaint – is it possible to understand that Chrysal

had a classification dispute with Customs, involving two subheadings of the HTSUS, relating to

imported "flower food."  The August 2009 letter cannot reasonably be read to convey any of that

information.

  For its part, Chrysal makes no attempt to argue that the August 2009 letter satisfies the "mandatory" criteria for protests prescribed by statute and by regulation.  *See* Koike Aronson, 165 F.3d at 909; 19 U.S.C. § 1514(c)(1)(A)-(C); 19 C.F.R. § 174.13(a)(1)-(6).  Chrysal implicitly concedes that the August 2009 letter does not meet those requirements.  *See* Pl.'s Brief at 2-3.  But, relying on Cisco Systems and Mattel, Chrysal argues that protests are to be construed liberally and should be found to be "valid even though they do not meet the strict criteria of [the statute and the regulation]."  *Id.* at 3; Cisco Systems, Inc. v. United States, 35 CIT ____, 804 F. Supp. 2d 1326 (2011); Mattel, Inc. v. United States, 72 Cust. Ct. 257, 377 F. Supp. 955 (1974).  Chrysal's position is wholly lacking in merit.

  The Government does not dispute that "technical precision" is not required in a protest, and that protests are to be liberally construed.  *See* Def.'s Reply Brief at 5-6, 7-8.  The salient point is that, here, there is simply *nothing* to be *construed*.

  This is not a case of a protest that is "cryptic, inartistic, or poorly drawn," but that nevertheless "conveys enough information to apprise knowledgeable officials of the importer's intent and the relief sought."  *See* Mattel, 72 Cust. Ct. at 262, 377 F. Supp. at 960 (quoted in Saab, 434 F.3d at 1365); *see also* Mattel, 72 Cust. Ct. at 265, 377 F. Supp. at 963 (noting that, in that case, "each of plaintiff's letters contain all the required elements of a protest").  Quite to the contrary, as detailed above, this is a case where the asserted protest – the August 2009 letter from Chrysal's parent company – satisfies not a single one of the applicable statutory and regulatory requirements. And, historically, the courts have been "unwilling to vitiate the protest requirements mandated by

Congress . . . in the guise of endorsing a liberal construction of protests." <u>CR Industries v. United States</u>, 10 CIT 561, 564 (1986) (quoted in, *inter alia*, <u>Tail Active Sportswear</u>, 16 CIT at 508, 793 F. Supp. at 328).

Chrysal's reliance on <u>Cisco Systems</u> and <u>Mattel</u> does nothing to advance its cause.  Both cases are readily distinguished from the facts of this case.  In both <u>Cisco Systems</u> and <u>Mattel</u>, the nature of the claim against Customs was clear, as was the relief that was sought.  *See generally* <u>Cisco Systems</u>, 35 CIT ____, 804 F. Supp. 2d 1326; <u>Mattel</u>, 72 Cust. Ct. 257, 377 F. Supp. 955.

The question presented in <u>Cisco Systems</u> was not whether there was an objection sufficient to notify Customs of the existence, nature, and character of a dispute, which is the question presented here.  Rather, the sole question in <u>Cisco Systems</u> was whether "networking equipment and parts thereof" (a term used in the protests) constituted a "category of merchandise" within the meaning of 19 U.S.C. § 1514(c)(1)(B), which requires that a protest identify "each category of merchandise affected by each [protested] decision." *See* <u>Cisco Systems</u>, 35 CIT at ____, ____, 804 F. Supp. 2d at 1328, 1332-33.  That the protests in <u>Cisco Systems</u> satisfied all other statutory and regulatory requirements for protests was not in issue.  In contrast, the alleged protest in this case – the August 2009 letter from Chrysal's parent company – satisfies none of the statutory and regulatory requirements.

Chrysal's invocation of <u>Mattel</u> is equally unavailing.  <u>Mattel</u> dealt with whether certain letters to Customs contesting classification decisions could be considered protests, even though the author had framed them as "section 520(c) request letters" (rather than protests under 19 U.S.C. §1514).  *See* <u>Mattel</u>, 72 Cust. Ct. at 257, 377 F. Supp. at 956-57.  As the <u>Mattel</u> court noted, the

letters at issue there "contain[ed] *all* the required elements of a protest." *Id*., 72 Cust. Ct. at 265, 377 F. Supp. at 963 (emphasis added). The facts of <u>Mattel</u> are thus far from comparable to the facts of the case at bar, where the August 2009 letter contains *none* of those required elements.[16]

Unable to demonstrate that the August 2009 letter to Customs from Chrysal's parent company met the mandatory criteria for a valid protest set forth by statute and regulation, and unable to avail itself of the general maxim that protests are to be construed liberally, Chrysal's case ultimately rests on its claim that – regardless of the content of the August 2009 letter – Customs understood the nature of Chrysal's grievance, and on its claim that Customs had an affirmative obligation to investigate Chrysal's asserted grievance. *See* Pl.'s Brief at 5. Like Chrysal's other arguments, however, these too wither under scrutiny.

Chrysal seeks to make much of an April 2009 email message from Customs' Import Specialist, alleging that the message proves that Customs "was aware that Chrysal was challenging the classification of its flower food." *See* Pl.'s Brief at 5; Complaint, Exh. B (email message to Chrysal from Customs Import Specialist, dated April 28, 2009). But Chrysal tries to read far too much into that communication. As explained in section I above, that email message did nothing more than note the chemical composition of the "powdered cut flower food" at issue in HQ 955771 and distinguish it from the chemical composition of a product that the email message identified as "Chrysal Clear Professional 2 T-bag." *See* section I, *supra*. No reasonable construction of the April

---

[16]Chrysal's brief quotes at length from both <u>Cisco Systems</u> and <u>Mattel</u>. *See* Pl.'s Brief at 3-5. The excerpts quoted include lengthy string cites that illustrate the general proposition that protests are to be construed liberally and that technical precision is not required. *See id*. It is telling, however, that Chrysal analyzes none of the cited cases. Even a cursory review reveals that, in each of those cases, the protest included significantly more information than the August 2009 letter to Customs from Chrysal's parent company.

2009 email message suggests that it constitutes an acknowledgment by Customs' Import Specialist that Chrysal was asserting a protest as to any specific entries on any particular grounds.

More importantly, even if the April 2009 email message could be read to indicate that the Import Specialist "was aware that Chrysal was challenging the classification of its flower food," the argument still could not carry the day.  The Court of Appeals has expressly held that Customs' actual knowledge of a protestant's grievance is irrelevant to an analysis of the sufficiency of an asserted protest.  *See* Koike Aronson, 165 F.3d at 909.  In Koike Aronson, the plaintiff argued that "Customs was fully informed . . . as to the substance of Koike's position," both "through prior discussions" and through "pre-protest correspondence."  *Id*.[17]  The Court of Appeals made short work of the plaintiff's theory:

> Even assuming that Koike's characterization of the facts is accurate, Koike is in effect asking us to hold that a protest is valid if a court can surmise, from the surrounding circumstances, that Customs was aware of the substance of the protesting party's claim.  The requirements for a valid protest that are contained in section 1514(c)(1) and the implementing regulation, however, are mandatory.

*Id*.  There is thus no merit to Chrysal's attempts here to establish the validity of its asserted protest by resort to "the surrounding circumstances."  *See id*.[18]

_____

[17]Indeed, the plaintiff in Koike Aronson emphasized that "Customs did not deny [Koike's] protest on the ground that [Customs] did not understand the basis of Koike's claim, but instead denied the protest on the merits, thus implicitly admitting that it had sufficient information regarding the substance of the protest."  Koike Aronson, 165 F.3d at 909.  In contrast, in the case at bar, not only was Chrysal's alleged protest not denied "on the merits," but – in fact – Customs never made any decision at all on the August 2009 letter, because Customs never recognized the letter as a protest.

[18]In Tail Active Sportswear, Chrysal's counsel made the exact same claim that he seeks to advance here.  The court there flatly rejected the argument, holding that "[t]he reviewing import specialist's understanding with regard to what merchandise plaintiff intended to be covered [by the protest] . . . is wholly immaterial under the circumstances here, and cannot substitute for compliance

      Just as ill-conceived is Chrysal's attempt to shift its burden under the statute and the regulation to Customs by claiming that the August 2009 letter from Chrysal's Dutch parent company should have "'prompted Customs to seek the precise factual evidence necessary to evaluate [it]'" as a potential protest.  *See* Pl.'s Brief at 5 (*quoting* <u>Saab Cars USA, Inc. v. United States</u>, 27 CIT 979, 986, 276 F. Supp. 2d 1322, 1329 (2003), *aff'd*, 434 F.3d 1359 (Fed. Cir. 2006)).  There is some limited authority suggesting that Customs may be expected to inquire into the facts related to a protest in certain cases involving very specific circumstances, such as where merchandise is made up of multiple components and it is necessary to seek clarification as to the precise items at issue.  *See* <u>Estee Lauder, Inc. v. United States</u>, 35 CIT ____, ____, 2011 WL 770001 * 7 (2011) (involving "cosmetics kit") (cited in block quote in Pl.'s Brief at 3).  But clearly this is not such a case.  Here,

---

with the statute and Customs regulations regarding the form and content of protests."  *See* <u>Tail Active Sportswear</u>, 16 CIT at 508, 793 F. Supp. at 328-29.

     *See also*, *e.g.*, <u>XL Specialty Ins. Co.</u>, 28 CIT at 870, 341 F. Supp. 2d at 1261 (rejecting plaintiff's contention that its protest "'must have been sufficiently informative,' because of the written response of the Customs official on the protest form"; *quoting* <u>Sony Elecs., Inc. v. United States</u>, 26 CIT 286, 287 (2002) for the proposition that "'[t]he test for determining the validity and scope of a protest is objective and independent of a Customs official's subjective reaction to it'"); <u>Ammex</u>, 27 CIT at 1682, 1685, 288 F. Supp. 2d at 1380, 1382 (rejecting plaintiff's claim that "the parties' prior communications" and "'surrounding circumstances' could help to ascertain the content" of protest); <u>Power-One Inc. v. United States</u>, 23 CIT 959, 964, 83 F. Supp. 2d 1300, 1305 (1999) (stating that "[t]he test for determining if a submission is a protest is objective and independent of a Customs official's subjective reaction to it"); <u>Washington Int'l Ins. Co.</u>, 16 CIT at 602-04 (holding that plaintiff's "fatally deficient protest cannot be resuscitated by plaintiff's conjecture that Customs had 'actual knowledge' of [plaintiff's] claimed classification"); <u>Mattel</u>, 72 Cust. Ct. at 266, 377 F. Supp. at 963 (explaining that "[t]he test for determining the sufficiency of a protest under [the statute] . . . is an objective one and is not dependent upon the district director's subjective reaction thereto"); *cf*. <u>Estee Lauder, Inc. v. United States</u>, 35 CIT ____, ____, 2011 WL 770001 * 6 (2011) (in evaluating Government's argument, noting that "[c]ollateral information may not be considered when determining the jurisdictional sufficiency of a protest" and that "a determination of protest sufficiency employs an objective and not a subjective test").

the August 2009 letter stated simply that Chrysal's parent company had made no "major" changes

to the formulation of its flower food since 1996.  Such a communication left no open question for

Customs' resolution and did not require Customs to make any inquiry.

Moreover, in the authority on which Chrysal relies, the protest was otherwise complete.  *See*

Estee Lauder, 35 CIT at _____ & n.4, 2011 WL 770001 * 2 & n.4 (*quoting* relevant excerpts from

protest).  It is another matter entirely to suggest, as Chrysal apparently does, that Customs has an

obligation to investigate and formulate an importer's protest essentially *ab initio*.  In XL Specialty

Insurance, where the sole issue was whether the (otherwise sufficient) protest adequately stated the

"reasons" and "justifications for the objection," the court dismissed a similar suggestion:

> This Court is not persuaded by Plaintiff's argument that the underlying reasoning
> [for its protest] could have been determined by Customs *with minimal investigation*.
> . . . Under the statute, Plaintiff clearly bears the burden of setting forth the reasons
> and justifications for its objections to Customs' decisions.

XL Specialty Ins. Co., 28 CIT at 869, 341 F. Supp. 2d at 1261 (emphasis added) (citing, *inter alia*,

19 U.S.C. § 1514(c)(1)).  Quoting Washington International Insurance, the court cautioned that any

other ruling "'would . . . effectively *require Customs to scrutinize the entire administrative record*

*of every entry* in order to divine potential objections and supporting arguments which an importer

*meant* to advance.'"  XL Specialty Ins. Co., 28 CIT at 869-70, 341 F. Supp. 2d at 1261 (first

emphasis added) (*quoting* Washington Int'l Ins. Co., 16 CIT at 604).  Such a regulatory scheme

would be patently unworkable.[19]  Chrysal's claim that the August 2009 letter should have triggered

---

[19]A few key statistics serve to illustrate the impracticality of the regulatory burden that
Chrysal seems to contemplate.  In fiscal year 2008 alone, Customs processed 29 million individual
entries of imported merchandise at 327 ports of entry.  *See* United States Customs & Border
Protection, *Performance and Accountability Report*: *Fiscal Year 2008*, at 6.  As the Court of
Appeals has noted, "[t]he corresponding volume of protests is necessarily large, though exact

an investigation by Customs thus cannot be sustained.

In sum, it is true that "denial of jurisdiction for insufficiency of protest is a severe action which should be taken only sparingly." Eaton Mfg. Co. v. United States, 469 F.2d 1098, 1104 (C.C.P.A. 1972) (cited in block quote in Pl.'s Brief at 3). On the other hand, as the Court of Appeals has underscored:

> [P]rotests are not "akin to notice pleadings [that] merely have to set forth factual allegations without providing any underlying reasoning." . . . Because the statutory and regulatory requirements are jurisdictional, the consequence of failing to comply with them is harsh. Fortunately, however, the requirements are straightforward and not difficult to satisfy, and thus dismissals for failure to comply with the jurisdictional prerequisites should be rare.

Koike Aronson, 165 F.3d at 909 (quoting Computime, Inc. v. United States, 772 F.2d 874, 878 (Fed. Cir. 1985)); see also, e.g., Saab, 434 F.3d at 1367 (quoting Koike Aronson concerning distinction between the statutory and regulatory standards applicable to protests and the much more lenient "notice pleading" standards).

As outlined above, notwithstanding the fact that the mandatory statutory and regulatory requirements governing the validity of a protest are "straightforward" and "not difficult to satisfy," the August 2009 letter from Chrysal's Dutch parent company nevertheless failed to satisfy any of them. The otherwise "harsh" consequence of the dismissal of Chrysal's complaint for lack of jurisdiction must necessarily follow. See Koike Aronson, 165 F.3d at 909.

---

numbers of protests are not published." DaimlerChrysler Corp., 442 F.3d at 1321 (analyzing comparable data for fiscal year 2005).

Any suggestion that Customs has any sort of independent obligation to scour the entire administrative record of each of the 29 million entries that it processes each year in order to "divine potential objections and supporting arguments" has no foundation in reality. See XL Specialty Ins. Co., 28 CIT at 869-70, 341 F. Supp. 2d at 1261 (quoting Washington Int'l Ins. Co., 16 CIT at 604).

B.   The Statutory and Regulatory Requirements Restricting the Timing of A Protest

As set forth above, the August 2009 letter to Customs from Chrysal's Dutch parent company did not constitute a valid protest, because the letter failed to satisfy the applicable statutory and regulatory requirements governing the contents of a protest. *See* section II.A, *supra*. However, even if the contents of the August 2009 letter had sufficed to constitute a protest, the letter nevertheless could not constitute a protest as to Entries HG8-0120126-7, HG8-0120127-5, and HG8-0120150-7, because the letter predated the liquidation of those entries. Accordingly, without regard to the contents of the August 2009 letter, jurisdiction will not lie as to Entries HG8-0120126-7, HG8-0120127-5, and HG8-0120150-7. *See* Pl.'s Brief at 5; Def.'s Motion to Dismiss at 13-14; Def.'s Reply Brief at 9.

The statute expressly provides that a protest is to be filed with Customs "within 180 days after but *not before* . . . [*the*] *date of liquidation*" of the entry at issue. 19 U.S.C. § 1514(c)(3)(A) (emphasis added); *see also* 19 C.F.R. § 174.12(e) (requiring filing of any protest "within 90 days *after*" a specified protestable decision or event) (emphasis added). Here, Entries HG8-0120126-7, HG8-0120127-5, and HG8-0120150-7 were not liquidated until mid-September 2009 – several weeks after the August 2009 letter. *See* Summons; Def.'s Motion to Dismiss at 13.[20] As such, even if the August 2009 letter were sufficient to constitute a protest (which it is not), the letter nevertheless would have been premature as to the three listed entries, and thus could not serve as a basis for jurisdiction as to those entries. *See*, *e.g.*, United States v. Reliable Chemical Co., 605

---

[20]Specifically, Entries HG8-0120126-7 and HG8-0120127-5 were liquidated on September 11, 2009, and Entry HG8-0120150-7 was liquidated on September 18, 2009. *See* Summons; Def.'s Motion to Dismiss at 13.

F.2d 1179, 1181-84 (C.C.P.A. 1979) (reversing trial court's denial of Government's motion to dismiss for lack of jurisdiction, where protest was filed upon receipt of courtesy notice of anticipated liquidation, but three days prior to posting of bulletin notice of liquidation, which constituted official date of liquidation); <u>United States v. Nils A. Boe</u>, 543 F.2d 151, 155-56 (C.C.P.A. 1976) (and cases cited there).

In sum, without regard to the sufficiency of the contents of the August 2009 letter, there was no valid protest as to Entries HG8-0120126-7, HG8-0120127-5, and HG8-0120150-7.  And, absent a valid protest, jurisdiction under 28 U.S.C. § 1581(a) cannot lie.  The timing of the August 2009 letter thus constitutes a second, wholly independent basis for dismissal as to three of the 17 entries at issue in this action.

### III.  <u>Conclusion</u>

For all of the foregoing reasons, jurisdiction over this challenge to Customs' liquidation of "flower food" in the subject entries of merchandise will not lie.  The Government's Motion to Dismiss therefore must be granted, and this action dismissed for lack of subject matter jurisdiction.

Judgment will enter accordingly.

/s/ Delissa A. Ridgway<br>Delissa A. Ridgway<br>Judge

Decided:  July 18, 2012
         New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

CHRYSAL USA, INC.                          :

                           *Plaintiff*,    :

                    v.                     :          Court No. 11-00092

UNITED STATES,                             :

                          *Defendant*.     :
_____

## **JUDGMENT**

This action having been duly submitted for decision; and the Court, after due deliberation, having rendered a decision herein;

NOW, therefore, in conformity with said decision, it is

ORDERED that Defendant's Motion to Dismiss is granted; and it is further

ORDERED, ADJUDGED, and DECREED that this action be, and hereby is, dismissed.


                                    /s/ Delissa A. Ridgway
                          _____
                              Delissa A. Ridgway, Judge

Dated: July 18, 2012
       New York, New York